UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARINA M. CARPENTER
JENKINS,

                     Plaintiff,

v.

ANTHONY J. SCOTTA, *et al*.,

                  Defendants.
_____/

Case No.: 17-11781

Laurie J. Michelson
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**DISMISSAL OF PLAINTIFF'S COMPLAINT**

## I.     PROCEDURAL HISTORY

Plaintiff Carina Carpenter Jenkins filed a complaint on June 5, 2017,

alleging violations of federal and state law relating to Michigan State Court

proceedings terminating her parental rights.[1]  (Dkt. 1).  On July 18, 2017, District

Judge Laurie J. Michelson granted plaintiff's application to proceed without

prepaying fees or costs (Dkt. 5) and assigned pretrial matters to the undersigned.

(Dkt. 7).  Plaintiff filed an amended complaint, entitled "Amended Petition," on

_____

[1] In an Order dated May 30, 2018, this Court found that Carina Carpenter Jenkins is the
only plaintiff in this case, as she is the only party to have signed the Amended Complaint.  (Dkt.
43, at p. 3).

August 30, 2017.  (Dkt. 9).  In response, defendants Braxton, Evans Woods, and

Smith (the "State Court defendants")[2] as well as defendants Chatman, Day, Keller,

and Wheeler (the "State defendants") filed motions for more definite statement.

(Dkts. 27, 30).  On September 27, 2018, the Court granted the motions and ordered

plaintiff to file a more definite statement in the form of a third amended complaint

within 14 days of the order.  (Dkt. 66, at p. 7-8).  On October 16, 2018, Carpenter

Jenkins filed a "More Definite Statement," essentially in the form of a brief

arguing for judgment in her favor.  (Dkt. 71).  The State defendants then brought a

motion to dismiss the "More Definite Statement," in which the State Court

defendants concurred.  (Dkt. 73).   On March 1, 2019, Carpenter Jenkins filed a

"Third Amended Petition."  (Dkt. 90).  The State defendants filed a motion to

strike the third amended complaint (Dkt. 93) and the State Court defendants filed a

motion to dismiss the third amended complaint (Dkt. 95).

The undersigned has reviewed Carpenter Jenkin's amended complaint, the

"More Definite Statement," and the "Third Amended Petition."  For the reasons

that follow, the undersigned recommends that the case be dismissed with prejudice.

---

[2] It appears that defendants Evans Woods and Smith are listed twice in the caption on the docket.  Evans Woods is listed as both Raeigen L. Woods Evans and Raeigen L. Evans Woods. Defendant refers to herself as Evans Woods, not Woods Evans.  Plaintiff named Evans Woods in her complaint.  Smith is listed as both Virgil C. Smith and Virgil Smith.  There is no indication that this is not the same person.

## II.    FACTUAL ALLEGATIONS

Carpenter Jenkins' amended complaint at docket no. 9 is a 73-page long, often rambling recitation of facts, claims and exhibits.  As best as can be discerned, plaintiff is challenging state court decisions placing her minor children in foster care and terminating her parental rights.  She brings her claims pursuant to 42 U.S.C. § 1983.  Carpenter Jenkins alleges that her constitutional rights were violated by the actions of the defendants and their involvement in the termination of her parental rights.  She contests the foster care workers' removal and foster care placement of two of her minor children, claiming that the placement was unfit to care for children.  (Dkt. 9, at Pg ID 39).  She alleges that various defendants made false representations in state court custody proceedings about her lack of participation in services and that there were no attempts to reunify her and the minor children.  (*Id.* at Pg ID 35, 38, 40, 42).  Carpenter Jenkins claims that she was not provided notice of a custody hearing held December 13, 2016 (it appears that she is referring to the hearing after which State Court defendant Evans Woods recommended termination of parental rights (*see* Dkt. 9, Pg ID 78, recommendation after hearing held on December 13, 2016)) and other hearings. (*Id.* at Pg ID 35, 40, 43).  She also alleges that defendant Day willfully withheld evidence of her compliance with services from the state court.  (*Id.* at Pg ID 35,

40).  She says that State Court defendant Evans Woods stated that she, Carpenter Jenkins, was deceased in the report and recommendation recommending that her parental rights be terminated to avoid having to notify her of the hearing.  She further asserts that Evans Woods is biased.  (*Id.* at Pg ID 35, 39).

Carpenter Jenkins also challenges the constitutionality of M.C.L. § 722.628(8) both on its face and as applied (Dkt. 9, Pg ID 33, 46), alleging that she has been suffering irreparable injury from the threat and fear of enforcement of the statutory provision (*Id.* at Pg ID 44).  She asserts that defendants Snyder and Keller were aware of unconstitutional actions taken by employees of the Department of Health and Human Services, but did not act in the face of this knowledge.  (*Id.* Pg ID 36).  She seeks full reinstatement of her parental rights, money damages, a declaration that the "Statutes and Protocols" and the first two sentences of M.C.L. § 722.628(8) are unconstitutional, and an injunction against the defendants from enforcing the first two sentences of the Michigan statute.  (*Id.* at Pg ID 48).

The claims in the "More Definite Statement" and "Third Amended Petition" are similar to the claims in the amended complaint, but far fewer.  In the "More Definite Statement," she again asserts that the defendants made false claims in court and that the defendants held a hearing to terminate her parental rights without properly notifying "interest[ed] parties."  (Dkt. 71, Pg ID 770).  In the Third Amended Petition, she maintains that the defendants provided false information to

4

terminate her parental rights and that Evans Woods unlawfully altered the report

and recommendation in which it was originally represented that Carpenter Jenkins

was deceased.  Further, she asserts that defendant Day conspired to kidnap and

remove her minor child from the father.  She seeks reinstatement of her parental

rights and the return of minor child J.A.K.B. to her custody.[3]  (Dkt. 90, Pg ID 962-

63).

### III.    ANALYSIS AND RECOMMENDATIONS

####     A.    Introduction

Plaintiff attempts to set forth her claims in three separate filings on the

docket—or what plaintiff characterizes an amended petition, a more definite

statement, and a third amended petition (Dkts. 9, 71, 90).  Considering all three

documents, the case should be dismissed for a number of reasons, all discussed

below.  Plaintiff is proceeding *pro se* in this matter.  While *pro se* litigants are

expected to apprise themselves of the court's rules and adhere to the pleading

standards set forth in the law of this circuit, they are afforded some degree of

latitude in view of their inexperience with legal proceedings and in applying the

law.  *West v. Saginaw Twp. Police Dep't.*, 2014 WL 3599495, at *2 (E.D. Mich.

July 22, 2014) (a *pro se* plaintiff is "not excused from failing to follow the Federal

---

[3] In the amended complaint, Carpenter Jenkins seeks the return of two minor children.  In the later two iterations of her complaint she seeks the return of one child, J.A.K.B.

Rules of Civil Procedure"); *Fields v. Cnty. of Lapeer*, 2000 WL 1720727 (6th Cir. 2000) ("It is incumbent on litigants, even those proceeding *pro se*, to follow ... rules of procedure."); *Kitchen v. Corizon Health Inc*., 2018 WL 286425, at *4 (W.D. Mich. Jan. 4, 2018) ("The Federal Rules of Civil Procedure bind even *pro se* individuals.").  For this reason, and the reasons that follow, the undersigned will consider all three filings in making a recommendation.  The docket reveals that a large number of court documents mailed to Carpenter Jenkins were returned as undeliverable.  For instance, on June 19, 2018, the Court ordered plaintiff to respond to two motions for more definite statement.  (Dkt. 50).  On September 27, 2018, having received no response from Carpenter Jenkins, the Court granted the motions.  (Dkt. 66).  On February 25, 2019, about eight months after issuing the order for a response to the motions, the order was returned as undeliverable.  (Dkt. 89).  And, the September 27, 2018, order granting the motions for more definite statement and requiring Carpenter Jenkins to file a third amended complaint was returned as undeliverable on March 11, 2019.  (Dkt. 92).  However, despite these and other orders being returned as undeliverable to the address the Court had on file,[4] it appears that Carpenter Jenkins was receiving at least some of these filings or otherwise had access to them because she responded to some of them.  For

---

[4] Carpenter Jenkins has since updated her address.  (Dkt. 99).

6

example, on June 5, 2018, this Court ordered Carpenter Jenkins to show cause why this matter should not be dismissed due to her failure to keep the Court informed of her current address.  (Dkt. 44).  On June 11, 2018, Carpenter Jenkins responded to the Order to show cause and provided a new address.  (Dkt. 45).  Yet, on December 13, 2018, the Order to show cause was returned as undeliverable (Dkt. 13), even though plaintiff had already responded in June 2018.  Likewise, although the September 27, 2018, Order granting the motions for more definite statement (Dkt. 66) was returned undeliverable, Carpenter Jenkins filed a "More Definite Statement" a little over two weeks later, on October 16, 2018, seemingly in response to the Order.  (Dkt. 71).  Further, on March 1, 2019, Carpenter Jenkins also filed a "Third Amended Petition" after this Court's order to file a third amended complaint (Dkt. 90), even though the Order was returned as undeliverable on March 11, 2019.  (Dkt. 92).

Both sets of defendants filed motions to strike and/or to dismiss both the "More Definite Statement" and "Third Amended Petition."  (Dkts. 73, 93, 95). The first of these motions is the State defendants' motion to dismiss the "More Definite Statement" on the grounds that Carpenter Jenkins did not follow the Court's order to file a third amended complaint that complies with the Federal Rules of Civil Procedure and that any amendment to the complaint would be futile. (Dkt. 73).   After plaintiff filed the "Third Amended Complaint," the State

7

defendants filed a motion to strike this filing because it does not comply with this Court's order to file a third amended complaint and to the extent the document is treated as a third amended complaint, these defendants say it should be dismissed because plaintiff failed to state a legal basis for the relief requested. (Dkt. 93). The State Court defendants filed their motion to dismiss the "Third Amended Petition," again on the grounds that this filing does not conform to the Court's Order and that this complaint fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6). (Dkt. 95).

As the defendants point out, neither the "More Definite Statement" nor the "Third Amended Petition" comply with the Court's Order to provide a more definite statement. Jenkins's "More Definite Statement" is in actuality a brief in support of judgment in her favor, including an Index of Authorities, Concise Statement of Issues Presented, Statement of Facts, and Argument. (Dkt. 71). The "Third Amended Petition" consists of seven numbered paragraphs of allegations against the defendants and a request for relief including full reinstatement of her parental rights to minor child J.A.K.B., monetary relief, and grand jury indictments against several of the defendants. (Dkt. 90). But this amended petition was filed some four and a half months after the Order to file a third amended complaint issued, and about four months after plaintiff filed her "More Definite Statement."

These two more recent filings from Carpenter Jenkins do not comply with the Court's Order.  The Court ordered Carpenter Jenkins to file a third amended complaint within 14 days of the Order and warned that "**Failure to file a third amended complaint within 14 days of this Order may result in sanctions, including a recommendation of dismissal under Rule 41(b).**" (*Id.* at p. 8) (emphasis in original).  In the Order, the Court directed plaintiff to the legal and procedural standards required of her in drafting and filing the third amended complaint, including information on the requirements of Fed. R. Civ. P. 8(a) and 10.  (Dkt. 66, at p. 6-8) (emphasis in original).

The claims in the three documents are generally the same, although the amended complaint at docket no. 9 contains more claims and gives the most factual background.  Given the circular cycle of Court orders, orders being returned as undeliverable, and plaintiff's responses, it may be unfair to determine outright that the amended complaint at docket no. 9 is the operative complaint because Carpenter Jenkins did not sufficiently or timely respond to Court orders.  Thus, the undersigned has considered the allegations in all three documents, and nonetheless recommends that the case be dismissed with prejudice for the reasons that follow.

B.    <u>Authority</u>

9

As stated, the defendants seek dismissal of the latest iterations of the complaint, the "More Definite Statement" and "Third Amended Petition," on the ground that they do not conform with the Court's order. While failure to comply with the Court's orders may provide grounds for dismissal, in view of plaintiff's repeated attempts to satisfy the orders, as a matter of discretion the undersigned declines to recommend dismissal on those grounds. *See Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc*., 173 F.3d 988, 991 (6th Cir. 1999) (citing *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991)) ("[D]istrict courts possess broad discretion to sanction parties for failing to comply with procedural requirements."). Instead, because all three iterations of the "complaint" were filed after original complaint and thus have not yet been screened, the undersigned will undertake a screening of the various "complaints." The Court must screen complaints filed by non-prisoners who are proceeding *in forma pauperis. See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (citing 28 U.S.C. § 1915(e)(2), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). Dismissal is required if complaints are frivolous or malicious, if they fail to state a claim for relief, or if they seek monetary relief from a defendant who is immune from such relief. *Hill v. License*, 2018 WL 1787295 (E.D. Tenn. Apr. 13, 2018); 28 U.S.C. § 1915(e)(2).

C.    Discussion

1.    Subject Matter Jurisdiction

Upon review of the three documents, the undersigned suggests that under the *Rooker-Feldman* doctrine this Court does not have subject matter jurisdiction over some of the claims and relief sought.  The district court may raise subject matter jurisdiction *sua sponte*.  *Cincinnati Bell Tel. Co., LLC v. Time Warner Cable*, *Inc.*, 2009 WL 10679472, at \*2 (S.D. Ohio Aug. 25, 2009).  "Indeed, the Supreme Court has indicated that 'abstention may be raised by the court *sua sponte*.'"  *Fed. Exp. Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, 966 (6th Cir. 1991) (quoting *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10 (1976)); *see also Louisiana Power & Light v. Thibodaux*, 360 U.S. 25 (1959).

This Court lacks subject-matter jurisdiction over claims seeking to overturn state court rulings under the *Rooker-Feldman* doctrine.  Carpenter Jenkins filed this action to challenge the Wayne County Circuit Court's Order terminating parental rights and other orders regarding child custody.  (Dkt. 9, Pg ID 38-48).  The *Rooker-Feldman* doctrine raises a jurisdictional bar that prohibits a federal district court from engaging in appellate review of state-court judgments.  *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  More recently, the United States Supreme Court has clarified the scope of the *Rooker-Feldman* doctrine, holding that it is confined to "cases brought by state-court losers complaining of injuries caused by state-court

11

judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments." *Exxon Mobil Corp. v.*

*Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

In determining the applicability of the *Rooker–Feldman* doctrine, federal

courts "cannot simply compare the *issues* involved in the state-court proceeding to

those raised in the federal-court plaintiff's complaint," but instead "must pay close

attention to the *relief* sought by the federal-court plaintiff." *Bianchi v.*

*Rylaarsdam,* 334 F.3d 895, 900 (9th Cir. 2003) (emphasis in original); *Berry v.*

*Schmitt,* 688 F.3d 290, 299 (6th Cir. 2012).  Where the plaintiff seeks injunctive

and declaratory relief prohibiting the future application of a statute, and not to

overturn the state court's judgment under that statute, *Rooker-Feldman* does not

apply.  *Hood v. Keller*, 341 F.3d 593, 598 (6th Cir. 2003).  However, where the

plaintiff seeks to overturn the state court rulings, and not just a declaration that the

applicable state law is unconstitutional, *Rooker-Feldman* applies.  Both the

Supreme Court and Sixth Circuit have cautioned about the narrow scope of the

doctrine, emphasizing that while an attack on a state court judgment in federal

court in impermissible, the federal court has jurisdiction over an independent

claim, even if it is one that denies a legal conclusion that a state court has reached

in that case.  *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280

(2005); *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006).  In *McCormick*,

the Sixth Circuit explained,

> The inquiry [focuses on] the *source of the injury* the
> plaintiff alleges in the federal complaint.  If the source of
> the injury is the state court decision, then the *Rooker-
> Feldman* doctrine would prevent the district court from
> asserting jurisdiction.  If there is some other source of
> injury, such as third party's actions, then the plaintiff
> asserts an independent claim.

*McCormick*, 451 F.3d at 393.

Here, the heart of Carpenter Jenkins's complaints are the state court custody

and parental rights judgments, and it appears as though at least part of the injury

she claims is caused by the judgments rendered in the state court.  Though she

seeks monetary damages and a declaration that a particular state law is

unconstitutional,[5] she also seeks injunctive relief: the return of her children to her

custody and the return of her parental rights.  (*See* Dkt. 9, Pg ID 48) (seeking "Full

reinstatement of parental rights" and the return of her minor children as part of the

relief requested).  Though many of the claims are independent claims, such as the

allegation that certain defendants did not notify her of state court proceedings or

took no action to correct unconstitutional conduct of state employees, she also

challenges the judgments themselves.  For example, she says that the judgment

---

[5] Discussed below.

13

terminating her rights says she is deceased, which is incorrect.  Reviewing the state court judgments on parental rights and child custody, outside of the independent claims she asserts, would require this Court to sit in review of the state court rulings.  This is the type of federal district court action prohibited by the *Rooker-Feldman* doctrine.  As such, to the extent that Carpenter Jenkins seeks a federal review and reversal of the state court termination of parental rights and custody of the minor children, dismissal of the claims under the *Rooker-Feldman* doctrine is appropriate.  *See Holloway v. Brush*, 220 F.3d 767, 796 (6th Cir. 2000) ("[The] claim is precluded under the *Rooker/Feldman* doctrine because [the plaintiff] is attempting to seek an impermissible appellate review by the federal district court of the state court's custody determination.").  Carpenter Jenkins' recourse at the time she filed the instant action was to exhaust her state court remedies and appeal any unfavorable decisions at the state court level and to the United States Supreme Court.

This Court also lacks subject matter jurisdiction under the domestic relations exception to federal jurisdiction.  Though Carpenter Jenkins begins the amended complaint at docket no. 9 with allegations that certain provisions of state law are unconstitutional or were unconstitutionally applied (Dkt. 9, Pg ID 33), the bulk of her complaint is about the actions of state employee defendants in child custody and foster care proceedings.  (*Id.* at Pg ID 34-38, 40-44).

14

The Supreme Court has held that federal courts have no jurisdiction to rule on domestic relations matters.  *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (holding that the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees").  "Even when brought under the guise of a federal question action, a suit whose subject is domestic relations generally will not be entertained in a federal court."  *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981).  The Sixth Circuit discussed the domestic relations exception in two recent cases: *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015) and *Chevalier v. Estate of Barnhart*, 803 F.3d 789 (6th Cir. 2015).  There, the court clarified that the domestic-relations exception applies only to a "narrow range" of cases, *Chevalier,* 803 F.3d at 795, and it does not apply "unless 'a plaintiff positively sues in federal court for divorce, alimony, or child custody,' or seeks to modify or interpret an existing divorce, alimony, or child-custody decree."  *Id.* at 796 (quoting *Catz v. Chalker*, 142 F.3d 279, 292 (6th Cir. 1998)).  "When analyzing the applicability of the domestic-relations exception, we must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?"  *Id.* at 797.

The answer to this question in this case is in the affirmative.  Carpenter Jenkins requests in all three iterations of the complaint the return of her children

and the reinstatement of her parental rights, i.e. issuance or modification of a child custody decree. To award such relief would require this Court to apply Michigan child custody law, question the state court custody determinations, and address the merits of the state court's determinations. "These considerations are what the domestic-relations exception was designed to prevent." *Stone v. Child Protection Servs.*, 2016 WL 4821371, at *5 (W.D.Ky. Sept. 9, 2016) (citing *Chevalier*, 803 F.3d at 794 ("[T]here are sound policy reasons to leave the issuance of divorce, alimony, and child-custody decrees to the state courts.")). Accordingly, the domestic relations exception applies in this case as to those claims implicating the reversal of state child custody decrees.

## 2.    Failure to State a Claim and Immunity

Where a plaintiff is proceeding *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii)). The Rule 12(b)(6) dismissal standard as explained in *Iqbal* and *Twombly* is applied to determine whether dismissal is warranted under § 1915(e)(2)(B)(ii). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010); *see also Pugh v. Norman*, 2017 WL 712751, at *3 (M.D. Tenn. Feb. 23, 2017) ). The court's ability to *sua sponte* review and dismiss claims filed *in forma pauperis* applies to both prisoner and nonprisoner litigants. *See McGore v. Wrigglesworth,* 114 F. 3d 601, 608 (6th Cir.

16

1997), overruled on other grounds by *Jones v. Brock,* 549 U.S. 199 (2007)

("Unlike prisoner cases, complaints by non-prisoners are not subject to screening

process required by § 1915A.  However, the district court must still screen the

complaint under § 1915(e)(2)."); accord *U.S. ex. Rel. Donaldson v. Conservation*

*Resource Alliance*, 2006 WL 695674 at *6 (E.D. Mich. March 14, 2006);

*Gebremariam v. City of Nashville Police Dep't*, 2016 WL 2854362 at *1 (M.D.

Tenn. May 16, 2016).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his [or her]

entitlement to relief," which "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Ass'n of*

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted)).

The Supreme Court has raised the bar for pleading requirements beyond the

old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that

had prevailed for decades.  *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d

625; 2009 WL 2497928, *2 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662

(2009)); *see also Twombly*, 550 U.S. at 555.  In *Iqbal*, the Supreme Court

explained that a civil complaint only survives a motion to dismiss if it "contain[s]

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face."  *Iqbal*, 556 U.S. at 677.  The Sixth Circuit observed that the updated

standard is designed to screen out cases that, while not utterly impossible, are

"implausible."  *Courie*, at *2.  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  And

although the Court must accept all well-pleaded factual allegations in the

complaint as true, it need not "'accept as true a legal conclusion couched as a

factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478

U.S. 265, 286 (1986)); *see also Iqbal*, 556 U.S. at 678.

　　　The pleadings of *pro se* litigants are held to a less stringent standard than

those drafted by attorneys, and as a consequence, should be liberally construed.

*See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).  Nevertheless, *pro se*

litigants remain subject to the Federal Rules of Civil Procedure.  Courts are not

expected to devise a claim where the plaintiff has failed to articulate one in his

pleadings.  *Brown v. Matauszak*, 415 Fed. Appx. 608, 613 (6th Cir. 2011).

Even if this Court had subject matter jurisdiction over plaintiff's claims, and to the extent neither the *Rooker-Feldman* doctrine nor the domestic relations doctrine applies to some of the claims, the case should still be dismissed because Carpenter Jenkins has not stated a claim on which relief may be granted, and some of the defendants in this case are immune from suit.

a. State Court Judges Braxton, Evans Woods, Smith

The state court judges (State Court defendants Braxton, Evans Woods, and Smith) should be dismissed. "It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004). "State judges enjoy absolute immunity from liability under 42 U.S.C. § 1983." *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012). "Judicial immunity exists even where a judge acts corruptly or with malice." *Id.*; *see also Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (state court judges and those persons who act as the judge's designee and carry out functions for which the judge is immune, such as juvenile court referees, also have judicial immunity). This immunity also applies to state court referees, such as Evans Woods. *Gould v. Suffety*, 2007 WL 1599716, at *3 (E.D. Mich. June 4, 2007) (citing *Tidik v. Ritsema*, 938 F. Supp. 416 (E.D. Mich. 1996). The three complaints do not suggest that actions taken by these defendants involve anything other than the performance of judicial functions. Carpenter Jenkins'

19

allegations consist largely of the claim that defendant Evans Woods made a false claim in the report and recommendation—that plaintiff was deceased—and failed to give proper notice of some of the hearings. This claim is about actions Evans Woods allegedly took in the performance of her judicial functions. As such, she is immune from suit in this Court over those actions. Likewise, Carpenter Jenkins has not made any claims against Braxton or Smith about actions taken outside of the performance of their judicial functions. As such, they too are entitled to absolute immunity against all claims in plaintiff's complaint and the Court should dismiss these defendants.

### b.    Attorney Anthony Scotta[6]

Carpenter Jenkins' former attorney, defendant Scotta, should be dismissed because attorneys are not subject to liability under § 1983 because they are not state actors. "[A]ttorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983." *Hahn v. Star Bank*, 190 F.3d 708, 717 (6th Cir. 1999). The same is true for a court-appointed attorney.[7] *Wright v. Cocke*, 765 F.2d 147 (Table), 1985 WL 13362 (6th Cir. 1985); *see also Polk Cty. v. Dodson*, 454 U.S. 312 (1981) (stating that state-appointed public defenders do not act under color of state law by virtue of being court-appointed

---

[6] This defendant has not been served with the summons and complaint.
[7] It is not clear whether Scotta was Carpenter Jenkins' court-appointed attorney or separately-hired attorney.

attorneys).  Carpenter Jenkins makes no allegation that Scotta was acting under color of law during the time relevant to her claims.  Scotta should be dismissed.

>           c.      Assistant Attorney General Keller

Defendant Keller, Assistant Attorney General, should also be dismissed. "Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'"  *Manetta v. Macomb County Enforcement Team,* 141 F.3d 270, 274 (6th Cir. 1998) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976)).  This includes a prosecutor's initiation of a prosecution and presentation of the State's case at trial.  *Imbler,* 424 U.S. at 431; *see also Jones v. Shankland,* 800 F .2d 77, 80 (6th Cir. 1986).  Absolute immunity also extends beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating ... judicial proceedings," or "undertak[ing] the defense of a civil suit.," as Keller apparently was in this case.  *Skinner v. Govorchin,* 463 F.3d 518, 525 (6th Cir. 2006) (citations omitted).  A prosecutor is entitled to absolute immunity when she acts "within the scope of [her] duties in initiating and pursuing a criminal prosecution." *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011) (quoting *Imbler*, 424 U.S. at 410).  Courts employ a "functional approach" to determine whether a prosecutor's acts entitled her to absolute immunity.  Under the functional approach, we "look[ ] to 'the nature of the function performed, not the identity of the actor who

performed it'" when assessing whether conduct is prosecutorial, and thus

absolutely protected. *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993) (quoting

*Forrester v. White,* 484 U.S. 219, 229 (1988)).  Absolutely protected acts of

advocacy include those "undertaken by a prosecutor in preparing for the initiation

of judicial proceedings or for trial, and which occur in the course of his role as an

advocate for the State." *Id.* at 273.

The claim against Keller is that she gave misinformation to the state court

and failed to act in the face of knowledge of unconstitutional conduct by state

employees.  For example, Carpenter Jenkins says that Keller "told the court that

Plaintiff did not attend any of the services provided . . . and in falsehood did

willfully defame the character of Plaintiff . . . and did provide false information to

the court."  (Dkt. 9, at Pg ID 42).  Carpenter Jenkins also says that Keller has

knowledge that state employees and caseworkers "routinely and systematically

violate constitutionally protected rights of parents and children."  (*Id.* at Pg ID 36).

Based on plaintiff's allegation, the first type of claim arises out of Keller's

representations to the court.  In other words, the claim arises out of Keller's actions

as an advocate for the State.  Thus, prosecutorial immunity applies.  This is so even

if Keller did in fact provide false information to the court about Carpenter Jenkins'

involvement in services or other issues.  As the Sixth Circuit has recognized,

prosecutorial immunity applies "so long as the general nature of the action in

22

question is part of the normal duties of a prosecutor," even when that immunity

"bar[s] § 1983 suits arising out of even unquestionably illegal or improper conduct

by the prosecutor."  *Pittman v. Cuyahoga County Dept. of Children and Family*

*Servs.*, 640 F.3d 716, 725 (6th Cir. 2011) (quoting *Cady v. Arenac Cnty.,* 574 F.3d

334, 340 (6th Cir. 2009)).  As the *Pittman* court further stated,

> Pursuant to this rule, prosecutors do not forfeit
> their absolute immunity when they knowingly make false
> statements while advocating before the court: "Like
> witnesses, prosecutors and other lawyers were absolutely
> immune from damages liability at common law for
> making false or defamatory statements in judicial
> proceedings (at least so long as the statements were
> related to the proceeding), and also for eliciting false
> and defamatory testimony from witnesses." *Burns v.
> Reed*, 500 U.S. 478, 489–90, 111 S.Ct. 1934, 114
> L.Ed.2d 547 (1991).

*Id.* at p. 725-26.  Accordingly, even if Keller made false or defamatory

representations to the court in judicial proceedings, she is immune from suit

because she made those representations as part of her prosecutorial duties.

Carpenter Jenkins' claim that Keller had knowledge of unconstitutional

conduct by state employees in family and child services appears to be an attempt to

hold Keller liable for any unconstitutional conduct via *respondeat superior*

liability.  This is impermissible.  It is well-settled that a civil rights plaintiff must

allege the personal involvement of a defendant to state a claim under 42 U.S.C. §

1983.  *See Monell v. Department of Social Svs.*, 436 U.S. 658, 691-92 (1978)

(Section 1983 liability cannot be based upon a theory of *respondeat superior* or vicarious liability); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009); *see also Taylor v. Michigan Dep't of Corrections*, 69 F.3d 716, 727-28 (6th Cir. 1995) (plaintiff must allege facts showing that defendant participated in, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability); *Nwaebo v. Hawk–Sawyer*, 83 Fed. Appx. 85, 86 (6th Cir.2003) (To recover against a given defendant for a claimed constitutional violation, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights.") (citing *Rizzo v. Goode*, 423 U.S. 362, 373–77 (1976)).   Any assertion that defendant Keller failed to supervise an employee, should be vicariously liable for an employee's conduct, and/or did not sufficiently respond to the situation are insufficient to state a claim under § 1983.  *See e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001).  Indeed, the mere fact that a defendant is a supervisor of the person who made the decision or took the action in question is not enough: *respondeat superior* is not an available theory of liability in a civil rights claim.  *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981).

The extent to which Keller was supervisor to any Department of Health and Human Services employees is unclear.  Nevertheless, even if she held some supervisory authority over the department's employees, based on the foregoing,

24

Carpenter Jenkins has failed to state a claim against Keller. A supervisor cannot be held liable under § 1983 absent a showing that the supervisor personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See, e.g., Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). The failure to act in the face of knowledge of unconstitutional conduct is insufficient. *Colson v. City of Alcoa, Tennessee*, 2017 WL 4019596, at *6 (E.D. Tenn. Sept. 11, 2017) (collecting cases). Here, there are no allegations that Keller participated in the acts of Department employees or otherwise herself authorized or approved their acts.

### d. Toni Day

The allegations against foster care caseworker Toni Day are that she withheld evidence of plaintiff's compliance with services from the state court (Dkt. 9, Pg ID 35), that she did not serve notice of a court hearing on plaintiff,[8] that she did not make any attempt to reunify plaintiff and the minor child (*Id.* at Pg ID 40), that she unlawfully took plaintiff's child without a warrant (*Id.* at Pg ID 42), and that she conspired with Denise Burns, who Carpenter Jenkins believes was an

---

[8] Whether it was Day's duty to serve notice of court hearings is unclear.

inappropriate foster care placement, to kidnap J.A.K.B. from the child's father
(Dkt. 90, Pg ID 963).

Day is absolutely immune from the claims about presenting erroneous
information to the Court about plaintiff.  "[U]nder certain circumstances, social
workers are entitled to absolute immunity."  *Holloway v. Brush,* 220 F.3d 767, 774
(6th Cir. 2000) (en banc).  The scope of this immunity is akin to the scope of
absolute prosecutorial immunity, *id.,* which applies to conduct "intimately
associated with the judicial phase of the criminal process," *Imbler v.*
*Pachtman,* 424 U.S. 409, 430 (1976).  As the Sixth Circuit explained,

> The analytical key to prosecutorial immunity ...
> is *advocacy*—whether the actions in question are those of
> an advocate. *See Buckley* [*v. Fitzsimmons* ], 509 U.S.
> [259,] 273–74 [113 S.Ct. 2606, 125 L.Ed.2d 209] [
> (1993) ]; *Kalina* [*v. Fletcher* ], 522 U.S. [118,] 125 [118
> S.Ct. 502, 139 L.Ed.2d 471] [ (1997) ]; *Pusey* [*v. City of*
> *Youngstown* ], 11 F.3d [652,] 658 [ (6th Cir.1993) ]. By
> analogy, social workers are absolutely immune only
> when they are acting in their capacity as *legal*
> *advocates*—initiating court actions or testifying under
> oath—not when they are performing administrative,
> investigative, or other functions. The case before us turns
> on whether the actions of which [the plaintiff] complains
> were taken by [the defendant social worker] *in her*
> *capacity as a legal advocate.*

*Holloway,* 220 F.3d at 775.

Testimony or recommendations given in court concerning a child's best interests as the social worker sees the matter is conduct within a social worker's absolute immunity. *Id.* at 776. Whether Day made misrepresentations to the court, intentional or otherwise, of is of no moment. Prosecutorial immunity applies "so long as the general nature of the action in question is part of the normal duties of a prosecutor," even when that immunity "bar[s] § 1983 suits arising out of even unquestionably illegal or improper conduct by the prosecutor." *Pitman*, 640 F.3d at 725 (quoting *Cady v. Arenac Cnty.,* 574 F.3d 334, 340 (6th Cir. 2009)). This protection given to prosecutors is extended to social workers. *Id.* Accordingly, Carpenter Jenkins' claims against Day about misrepresentations made to the state court should be dismissed for Day's absolute immunity.

This leaves the claims that Day did not attempt to reunify parent and child, failed to give notice of state court hearings, and conspired to kidnap her child and placed the child in a bad foster home. While Day is not protected by absolute immunity on these claims (from what can be discerned from the documents) because these actions do not appear to be legal advocacy, the Court does not have jurisdiction over these claims by application of the domestic relations exception to federal jurisdiction. In *Johnson v. Collins*, 2015 WL 4546794 (E.D.Ky. July 28, 2015), like Carpenter Jenkins, the plaintiff alleged that Collins, plaintiff's caseworker, kidnapped her children, removed her children without just cause,

27

forced her to sign papers she did not read or understand, and wrongly told her that

her children were being placed in foster care in Tennessee.  *Id.* at *2.  Johnson

sought injunctive relief in the form of the return of her children and punitive

damages.  The court found that it did not have jurisdiction over these claims under

the domestic relations exception.  The court stated,

> In this case, Johnson asserts the violation of two federal
> rights, but she "essentially raises domestic issues"
> because she is challenging the state's removal of her
> children from her custody and seeking relief in the form
> of the return of her children.  *Partridge v. State of
> Ohio,* 79 F. App'x 844, 845 (6th Cir.2003). . . .  Johnson's
> core concern is clear on the face of her complaint: she
> believes Collins improperly removed her children from
> her custody.  First, Johnson alleges that Collins lacked
> cause to remove Johnson's children from her custody,
> and she lists facts to support this claim.  *Id.* at 1–2.
> Second, she asserts that Collins kidnapped her children
> from her, *id.* at 1, which implies that Collins did not have
> the authority to remove her children.  Finally, Johnson's
> main request is to have her children returned to her. *See
> id.* at 3 ("I demand [i]mmediately, give my children back
> to me and stop kidnap[p]ing them...").  Because the core
> issue in Johnson's case involves a child custody decree,
> the Court lacks jurisdiction to decide Johnson's
> case.  *See Hughes v. Hamann,* 23 F. App'x 337, 338 (6th
> Cir. 2001) (holding that the district court lacked
> jurisdiction when a plaintiff claimed his constitutional
> rights had been violated by the state's removal of his
> children, and the plaintiff sought an injunction returning
> his children to his custody).

*Id.* at *3.

Carpenter Jenkins' claims against Day and the relief sought are similar to the claims and relief sought in *Johnson*.  In *Johnson*, those claims and the relief divested the district court of jurisdiction.  The claims and relief sought against Day in this case should also divest the Court of jurisdiction over the claims.  Thus, Day should be dismissed from this case.

> e.   Michigan Department of Human Services & Wayne County Department of Health and Human Services

Both the Michigan Department of Health and Human Services and the Wayne County Department of Health and Human services are immune from suit under the Eleventh Amendment.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton,* 24 F.3d 823, 826 (6th Cir.1993).  The State of Michigan has not consented to being sued in civil rights actions in federal court.  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004).  Indeed, several courts in this circuit have specifically held that state departments are absolutely immune from suit under the Eleventh Amendment.  *See McCray v. Michigan Dep't of Community Mental Health*, 2006 WL 1459844, at *1

29

(W.D. Mich. May 24, 2006); *Cooper v. Mich. Dep't of Cmty. Health,* 2006 WL 846727, * 1 (E.D. Mich. Mar. 31, 2006) (finding the Michigan Department of Community Health is immune from suit under the Eleventh Amendment); *Burns v. Chatman, et al.*, Case No. 18-13240 (Dkt. No. 5, filed November 19, 2018). Further, the State and its agents are not "persons" who may be sued under § 1983 for money damages. *McGhan v. Kalkaska Cty. Dep't of Human Servs.*, 2009 WL 2170151, at *11 (W.D. Mich. July 20, 2009) ("States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).[9]  Therefore, the Court should dismiss both the Michigan Department of Health and Human Services and the Wayne County local division of the Department.

f.      State Defendants Chatman and Wheeler

Carpenter Jenkins has failed to state a claim for relief against these defendants.  After the initial statement that defendant Chatman is sued "individually and in her official capacity as social worker for DSH CPS," (Dkt. 9, Pg ID 32), it appears that there are no further allegations specific to this defendant. To sufficiently state a claim to relief, a plaintiff must first comply with Rule

---

[9] The *McGhan* court also explained that the inclusion of the name of a county, such as Wayne County in this case or Kalkaska County in *McGhan*, simply identified the local division of a state department and that the employees of the county division are state employees.  As a local division of the department of health and human services, the Wayne County division is not separate from the state.

8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).  Carpenter Jenkins has not provided a short and plain statement of the claim against Chatman, and has asserted no grounds for her entitlement to relief against Chatman.  Accordingly, Chatman should be dismissed.

As to defendant Wheeler, the allegation against her is rather unclear.  In the portion of her complaint in which she names Wheeler among some factual allegations, Carpenter Jenkins alleges that she was kept from providing evidence at a conference call and that no one explained to her why it was contrary to the welfare of the children to stay in their home.  (Dkt. 9, Pg ID 40-41).  She then states,

> Subsequent testimony showed this was a pre-planned removal and not any alleged initial "interview" or "investigation into allegations" Defendant's [sic] Rhondi

> B. Keller along with Toni Day, and the Court" [sic] in
> that order.  As supervisor to Defendant Toni Day her then
> Supervisor Sharon Wheeler's aide to approve and
> authorize an "emergency" removal.  It is unclear who
> actually made any call to the court.

(*Id.* at Pg ID 41).  Since Carpenter Jenkins is naming Wheeler as Day's supervisor,

perhaps she is attempting to hold Wheeler liable for Day's alleged unconstitutional

violations.  However, as discussed above, § 1983 liability cannot be based on a

theory of *respondeat superior*.  Again, the mere fact that a defendant is a

supervisor of the person who made the decision or took the action in question is

not enough: *respondeat superior* is not an available theory of liability in a civil

rights claim.  *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981).  For this

reason, and because it appears plaintiff has not stated any other claim against

Wheeler on which relief may be granted, Wheeler should be dismissed.

g.     Defendants Snyder, Lyon, and Yager

Carpenter Jenkins' claims against these three defendants are based on the

theory that they had knowledge of Department of Human Services workers'

unconstitutional conduct and did nothing in the face of that knowledge, and that

they failed to properly train those employees.  Specifically, plaintiff alleges that

Snyder, as Governor of Michigan (sued in both his individual and official

capacities as Governor of Michigan) and Lyon, as Director of the Michigan

Department of Human Services, have known that state employees and caseworkers

32

for the Department of Human Services "routinely and systematically violate

constitutionally protected rights."  (Dkt. 9, Pg ID 36).  She alleges that Yager,

Executive Director of Children's Services Agency, is responsible for administering

all DHS child welfare services and assuring that all services operate in accordance

with constitutional, statutory, and regulatory requirements.  She states, among

other things, that in the face of knowledge of unconstitutional acts, these three

defendants failed to properly train workers, failed to recognize parents'

constitutional rights, they improperly and unnecessarily remove children, they

mistreat families, they have excessive caseloads and a disproportionate amount of

false child abuse and neglect allegations, they failed to lower barriers to

reunification, and they refuse services to promote reunification.  (*Id.* Pg ID 36-37).

First, the claims for money damages against these three defendants in their

official capacities are barred by Eleventh Amendment immunity.   *Wolfel v.

Morris*, 972 F.2d 712, 719 (6th Cir. 1992); *Will v. Michigan Dep't of State Police*,

491 U.S. 58, 73-4, n. 10 (1989).  And since it does not appear that plaintiff is

seeking prospective injunctive relief against these defendants (her requests for

injunctive relief are for reinstatement of her parental rights, a declaration that a

Michigan statute is unconstitutional, and an injunction prohibiting the enforcement

of that statute (Dkt. 9, Pg ID 48), requests that do not seem directed as these

33

defendants), the official capacity claims should be dismissed in their entirety. Only the individual capacity claims against these defendants remain.

Second, it appears that Carpenter Jenkins is attempting to hold Lyon and Yager liable as supervisors of their respective departments and to hold Snyder liable essentially as supervisor of the departments entirely.  As discussed above, a supervisor can be held liable for their own misconduct only.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  An official cannot be held liable under a theory of *respondeat superior*.  A supervisor's mere failure to act is therefore not enough to establish supervisory liability; instead "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor."  *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).  "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it."  *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (emphasis added) (internal quotation marks omitted).  The Sixth Circuit has interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at 300).  The Sixth Circuit has traditionally found supervisory liability claims to be plausible only when a supervisor is on notice of

34

misconduct *and* in some way acts in relation to the misconduct.  *Colson v. City of Alcoa, Tennessee*, 2017 WL 4019596 (E.D. Tenn. Sept. 11, 2017); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) ("[S]he has merely claimed that the appellants were aware of the alleged harassment, but did not take appropriate action. This is insufficient to impose liability on supervisory personnel under § 1983." (citation omitted)); *Hays v. Jefferson Cnty., Kentucky*, 668 F.2d 869, 873–74 (6th Cir. 1982) ("The mere 'failure to act (even) in the fact of a statistical pattern' of incidents of misconduct ... [is] insufficient to base [supervisory] liability on." (quoting *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *see also Essex v. County of Livingston*, 518 Fed. Appx. 351, 357 (6th Cir. 2013) (determining that a deputy's sexual assault could not impose supervisory liability on the sheriff simply based on an allegation that the sheriff had read newspaper articles about deputies who had perpetrated sexual assaults in "other jurisdictions"); *cf. Iqbal*, 556 U.S. at 677 ("[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of 'supervisory liability' is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents.").

Plaintiff claims that Snyder, Lyon, and Yager knew about the deficiencies with regard to child welfare but failed to take action by fixing problems or training

35

subordinates.  She does not allege that any of these defendants participated in a

constitutional violation nor that the defendants implicitly authorized or approved of

any constitutional violation.  For these reasons, Carpenter Jenkins' claims against

Snyder, Lyon, and Yager should be dismissed because she did not sufficiently

allege their personal involvement in a constitutional violation.

> h.    Detroit Police Department 9th Precinct[10]

Carpenter Jenkins makes no claim against the City of Detroit, Michigan.

Rather, she names only the Detroit Police Department, 9th Precinct, as a defendant.

The Sixth Circuit has held that "[a] suit against a city police department in

Michigan is one against the city itself, because the city is the real party in

interest."  *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 32 F.3d

989, 992 n. 1 (6th Cir. 1994) (citing *Moomey v. City of Holland,* 490 F. Supp. 188,

190 (W.D. Mich. 1980).  *Haverstick* involved a suit against the City of Romulus

and its police department for federal constitutional violations under § 1983.  The

Court noted that under Michigan law, a municipal police department is a creature

---

[10] The docket lists Det. Layher as a defendant who works for the Detroit Police Department, 9th Precinct.  Listing Layher as a defendant appears to be an error.  In the caption of the amended complaint at docket no. 9, Carpenter Jenkins clearly lists "Detroit City Police Department 9th Precinct Detective's Unit" as a defendant.  Nowhere in the substance of the complaint (the first 17 pages) does she mention the name Layher.  It is not until page 32 of 73 of the amended complaint, amidst attachments, that plaintiff listed Layher as defendant.  Since the 17 pages of allegations and requests for relief do not mention Layher at all, but only the police department, Layher should not be considered a defendant to this action.

of the municipality, and that the police department cannot be sued independently. Therefore, the *Haverstick* court dismissed the plaintiffs' claims against the police department at the outset of its decision.  Accordingly, the undersigned suggests that the Detroit Police Department, 9th Precinct is not amenable to suit under Carpenter Jenkins' § 1983 claim.  *See also Boykin v. Van Buren Twp.,* 479 F.3d 444, 450 (6th Cir. 2007) ("Van Buren Township Police Department is subsumed within Van Buren Township as a municipal entity to be sued under § 1983, and thus the Police Department was improperly included as a separate defendant in Boykin's suit."); *Laise v. City of Utica,* 970 F. Supp. 605, 608 (E.D. Mich. 1997) (noting that a city police department is merely an agency of the city, and therefore is not a proper defendant in a § 1983 lawsuit).

As indicated, Carpenter Jenkins has not alleged any claim against the City of Detroit. However, even if the undersigned construes the amended complaint as asserting a claim against the City, a municipality can be liable under § 1983 only if the municipality itself caused the constitutional deprivation, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978); it cannot be held liable for the acts of its police department on the basis of *respondeat superior.  See id.*  Carpenter Jenkins would have to show a specific "policy, statement, ordinance, regulation or decision, officially adopted and promulgated by the [city council].... [or a] constitutional deprivation[ ] visited pursuant to governmental 'customs' even

37

though such a custom has not received formal approval through the body's official decision-making channels." *Id.* A mere isolated unconstitutional act cannot establish *Monell* liability absent proof of some policy or custom that can be attributed to an official policymaker. *Oklahoma City v. Tuttle,* 47 U.S. 808, 823–24, 105 S.Ct. 2427 (1985). No such policy or custom was raised as an issue in either of the three documents. The police department should be dismissed.

### 3.   Challenge to M.C.L. § 722.628(8)

Carpenter Jenkins began the amended complaint with a claim regarding M.C.L. § 722.628(8). She seeks a declaration that the first two sentences of M.C.L. § 722.628(8) are unconstitutional and an injunction against the defendants from enforcing the first two sentences. (Dkt. 9, at Pg ID 48). This relief does not implicate the *Rooker-Feldman* doctrine, as she is not seeking to overturn a state court ruling against her under this statutory provision. However, this claim should be dismissed because Carpenter Jenkins lacks standing to contest the constitutionality of the statutory provision. The first two sentences of this provision are as follows:

> A school or other institution shall cooperate with the department during an investigation of a report of child abuse or child neglect. Cooperation includes allowing access to the child without parental consent if access is determined by the department to be necessary to complete the investigation or to prevent child abuse or child neglect of the child.

38

Within the amended complaint, Carpenter Jenkins says that she "has been suffering irreparable injury from the threat and fear of enforcement of MCL 722.628(8)." (*Id.* at Pg ID 44).  She further says that Beaumont Hospital informed her that if there was nothing in the child's file from the parents prohibiting "governmental interviews," then hospital staff would allow a child protection worker to interview the child.  (*Id.* at Pg ID 39).  Carpenter Jenkins says "there was something in place" but that did not stop defendant Day from "violating the rights of Plaintiff and her children."  (*Id.*).  There appears to be no allegation that any of the defendants or any state employee ever interviewed a minor child of hers at a school or at Beaumont Hospital, with or without parental consent.  Thus, as Carpenter Jenkins says, the source of her injury is the <u>threat</u> of enforcement of this statutory provision.

To satisfy the "irreducible constitutional minimum of standing," a plaintiff must establish that: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the defendant's alleged wrongdoing; and (3) that the injury can likely be redressed.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  A plaintiff must establish that she has a "personal stake in the outcome of the controversy."  *Susan B. Anthony List v.*

*Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 498

(1975)); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)

("When the plaintiff has alleged an intention to engage in a course of conduct

arguably affected with a constitutional interest, but proscribed by a statute, and

there exists a credible threat of prosecution thereunder, he 'should not be required

to await and undergo a criminal prosecution as the sole means of seeking

relief.'"). "Abstract injury is not enough. The plaintiff must show that [s]he has

sustained or is immediately in danger of sustaining some direct injury as the result

of the challenged official conduct and the injury or threat of injury must be both

'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 101–02 (1983). And, plaintiffs have the burden of

establishing standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493

(2009). Standing can be raised *sua sponte*. *Loren v. Blue Cross & Blue Shield of*

*Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

     The claim by Carpenter Jenkins that she has suffered irreparable harm by the

threat and fear of enforcement of the statute is a statement of hypothetical future

harm. There appears to be nothing imminent about her fear of injury under the

statute. *See, e.g., Schattilly v. Daugharty*, 2015 WL 1412502, at \*10 (E.D. Mich.

Mar. 20, 2015) (Finding plaintiff lacked standing to challenge the constitutionality

of M.C.L. § 722.628(8) where the only "harm" alleged was the claim that the

plaintiff might adopt children in the future which then may be subject to the "interview-absent-parental-consent procedure" of the statute.  The court concluded that this allegation was one of hypothetical future harm.).  Accordingly, this claim should be dismissed against all defendants for lack of standing.

Though there is some overlap in the arguments raised in the defendants' motions and the issues discussed herein, in light of the above recommendations to dismiss the case *sua sponte*, the undersigned suggests denying or terminating as moot the defendants' motions to strike and to dismiss the "More Definite Statement" and "Third Amended Complaint."

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the case be **DISMISSED WITH PREJUDICE**, and that defendants' motions to strike and to dismiss (Dkts. 73, 93, 95) be **DENIED OR TERMINATED AS MOOT**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

41

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 20, 2019

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 20, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: <u>Carina M. Carpenter Jenkins, 490 Mountain View Ln., Tracy City, TN 37387.</u>

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov